**In the United States District Court for the District of Kansas**

Case No. 23-cv-01267-TC

LARRY HOLMAN,

*Plaintiff*

v.

TEXTRON AVIATION, INC.,

*Defendant*

# MEMORANDUM AND ORDER

Larry Holman sued Textron Aviation, Inc., alleging that Textron discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. Doc. 31 at ¶ 4.a.i. Textron moves for summary judgment. Doc. 32. For the following reasons, Textron's motion is granted.

## I

### A

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

In a case where the moving party does not bear the burden of persuasion at trial, the summary judgment rules require that party to show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991); *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

**B**

This is an employment discrimination case. In short, Holman contends that Textron unlawfully terminated him because of his age. The following facts are uncontroverted, or, where properly controverted, stated in the light most favorable to Holman.

Larry Holman began working for Textron's predecessor in January 2008. Doc. 31 at ¶ 2.a.ii.[1] Holman was born in 1960. *Id.* at 2.a.i. Holman was over 40 when he began his employment. Doc. 33 at ¶ 3. Textron eventually promoted Holman to the management role known as a Value Stream Leader (VSL). *Id.* at ¶ 4.

[1] All document citations are to the document and page number assigned in the CM/ECF system.

VSLs are mandatory reporters under Textron's No-Harassment Policy. Doc. 31 at ¶ 2.a.v. That policy states that, "[i]t is the responsibility of persons in supervisory or management positions to maintain a workplace free from any form of harassment, including sexual harassment and to bring this policy to the attention of all employees, to verify that all employment actions are administered in accordance with this policy, and to *bring to the attention* of their supervisor or manager, their Human Resources representative, an Ethics and Compliance representative, or a Legal representative any violation of this policy of which they become aware." Doc. 33 at ¶ 32 (emphasis added). In this role, Holman supervised an employee named Sidney Toppah, Sr. Doc. 31 at ¶ 2.a.viii.

In August 2021, a Textron employee named Melissa Derber met with Brandy Ketchersid, a Textron Human Resources employee, and reported that Toppah sexually harassed her earlier that year. Doc. 31 at ¶ 2.a.vii. Textron, in response, investigated Derber's sexual harassment allegation. *Id.* at ¶ 2.a.ix. As part of its investigation, Textron interviewed several witnesses, including Toppah's supervisor, Holman. *Id.* at ¶ 2.a.x. The investigation revealed that Derber had first reported the harassment to her coworker, Michael Grayum. Doc. 33 at ¶ 13. Grayum, in turn, told his boss, Luke Matlock, who was also a VSL, about Derber's allegation. *Id.* at ¶¶ 12, 13. Matlock referred Grayum to Holman; Grayum and Holman subsequently discussed what happened. *Id.* at ¶ 13.

Textron's investigation led to the conclusion that, as Derber alleged, Toppah violated the company's No-Harassment Policy by sexually harassing her. Doc. 33 at ¶ 18. As a result, it terminated him. *Id.* Textron also learned through its investigation that Holman failed to follow Textron's policy of reporting Derber's allegations. Instead of bringing the report to human resources or his supervisor as required by company policy, Holman went directly to Toppah and told him that he needed to "[s]tay away from the girls" and "leave the women alone." *Id.* at ¶¶ 14, 15. As a result of his failure to notify his supervisor or human resources personnel, Textron never learned of Toppah's conduct until Derber reported it months later directly to human resources. *Id.* at ¶ 15–18.

After the investigation into Toppah's sexual harassment and Holman's role in reporting it, Holman's supervisors, Craig Bennington and Dave Wasserstrom, did not believe that Holman should be terminated. Doc. 33 at ¶¶ 20, 21. But Bennington had

additional conversations with Brandy Ketchersid, the investigator who conducted most of the employee interviews. *Id.* at ¶ 22. After these conversations, Bennington changed his mind and concluded that termination was appropriate after Holman's conduct. *Id.* at ¶ 23.

In September 2021, Holman met with Bennington and Ketchersid. Doc. 33 at ¶ 26. They told Holman that Textron would be moving forward with his termination but were willing to allow him to retire for dignity purposes. *Id.* at ¶¶ 26–27. Holman chose retirement. *Id.* at ¶ 28. Textron replaced him with two younger employees. Doc. 34 at ¶ 96.

Holman sued Textron for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. Doc. 31 at ¶ 4.a.i. He notes that Textron disciplined him more severely than his younger colleague, Luke Matlock, who engaged in the same conduct. *See generally* Doc. 34. In particular, Textron merely counseled Matlock, directing that he listen actively, follow up, and seek to understand issues by asking questions. Doc. 33 at ¶ 41.

Textron now moves for summary judgment against Holman. Doc. 32. It argues that Holman cannot establish that its legitimate, non-discriminatory reason for terminating him was pretextual.

## II

Holman has not demonstrated that a genuine dispute of material fact exists as to whether the decision to terminate him was pretextual. As a result, Textron's motion for summary judgment is granted.

### A

The Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*., makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age . . . ." 29 U.S.C. § 623(a). This prohibition on discrimination applies to protect "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). A plaintiff suing under the ADEA must prove that the challenged employment action was motivated by age. *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080–81 (10th Cir. 2023). While it is not

necessary that age is the exclusive reason, the plaintiff seeking to survive summary judgment must produce evidence "that age was the 'but-for' cause of the employer's adverse decision." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

When a defendant seeks summary judgment on an ADEA claim based on circumstantial evidence, federal courts apply the familiar *McDonnell Douglas* framework.[2] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 968–69 (10th Cir. 2017). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *Id.* at 969. If he or she does so, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for taking its adverse action. *Id.* at 970. If the defendant satisfies its burden, the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were pretextual—*i.e.*, "not the true reason for the employment decision." *Id.*

## B

Holman contends that he was terminated on the basis of his age in violation of the ADEA. Doc. 31 at ¶ 4.a.i.; Doc. 34 at 23. Textron does not dispute that Holman has made a prima facie claim of discrimination. Doc. 33 at 12–13. Instead, Textron argues that it had a legitimate, non-discriminatory reason for terminating Holman, and that Holman cannot show that its decision was pretextual. *See generally* Doc. 33. As discussed below, Textron is correct.

**1.** The burden to establish a legitimate, nondiscriminatory reason is "exceedingly light." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (citation omitted); *DePaula*, 859 F.3d at 968–69. On a motion for summary judgment, a defendant need only "'articulate a reason for the [action] that is not, on its face, prohibited' and that is 'reasonably specific and clear.'" *Frappied*, 966 F.3d at 1058 (citation omitted). It "need not persuade the court

[2] Neither party contends there is any direct evidence of discrimination, and each analyzes Holman's claim under the *McDonnell Douglas* test. *See* Doc. 33 at 12; Doc. 34 at 23.

that it was actually motivated by the proffered reasons." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Textron has met that burden. Textron states that "Holman was disciplined by Textron Aviation for his failure to follow company policy with regard to reporting harassment," and that "Holman does not dispute that this is the reason given by Textron Aviation for his discipline." Doc. 33 at 13. This reason is not facially discriminatory, and it is "reasonably specific and clear." *Frappied*, 966 F.3d at 1058 (quoting *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 n.4 (10th Cir. 1992)). Holman does not counter or disagree that Textron has met its burden, either. *See generally* Doc. 34.

**2.** The burden returns to Holman to show that the reason for his termination is pretext for discrimination. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018). A plaintiff "may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Id.* (quoting *DePaula*, 859 F.3d at 970). In other words, a plaintiff may show that the defendant's reason is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it is] unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011); *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).

Pretext probes the true intentions of the defendant, so the focus is limited to "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). A court's role "is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. S.W. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). All facts are examined "as they appear to the person making the decision, not as they appear to the plaintiff." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (citation and internal quotation marks omitted). Any doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough to show pretext. *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007).

Holman offers three primary arguments for why Textron's justification is pretextual. Doc. 34 at 27–35. But none—either individually or collectively—suggest that Textron's proffered reason for firing him constitutes pretext such that his case should proceed to trial.

*First*, he points to the differential treatment between him and the younger Matlock. *Id.* at 31. To succeed on his contention, Holman must have evidence that the identified employees, that is, he and Matlock, were both similarly situated and have engaged in misconduct of comparable seriousness. *See, e.g.*, *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1116–17 (10th Cir. 2007); *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)); *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) (applying *Kendrick*). Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. *Timmerman*, 483 at 1120. That is not to say every employment decision must be identical because "[a] company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct." *Kendrick*, 220 F.3d at 1233.

Matlock is not a proper comparator for Holman for a variety of reasons. For one thing, Holman failed to identify evidence that he and Matlock dealt with or had the same supervisor. Holman certainly alleges that he and Matlock did. *See* Doc. 34 at 24. But that is not enough: He has failed to "cit[e] to particular parts of materials in the record" as required by Fed. R. Civ. P. 56(c)(1). *Contra* Doc. 34 at ¶ 12 (citing two exhibits that fail to support this assertion). Without evidence that the pair had the same supervisor, Holman's argument fails. *See Timmerman*, 483 F.3d at 1121 (concluding that employees were not similarly situated because no evidence existed that two employees shared the same supervisor); *cf.* *Kendrick*, 220 F.3d at 1233 (finding that the lack of the same immediate supervisor diminished the evidentiary value of the comparison between two employees).

But even assuming Matlock and Holman shared the same supervisor, their conduct is materially distinguishable in at least two respects. For one thing, Holman was more closely connected to the situation because Toppah was Holman's—not Matlock's—responsibility. Moreover, the undisputed evidence shows that

Holman and Matlock responded differently to Derber's harassment allegations. Matlock told his employee, Grayum, to go and report it to Holman, Toppah's supervisor. In contrast, Holman told no one in the supervisory chain of command. Instead, he spoke privately to Toppah, and even then only generally told him to "[s]tay away from the girls" and to "leave the women alone." Even assuming Matlock violated Textron's policy, the differential treatment of Matlock and Holman is permissible when Matlock made sure the issue would be addressed by a supervisor and Holman made certain management would not timely learn of the complaint. That is a difference Textron could reasonably punish differently and fails to suggest pretext. *See Timmerman*, 483 F.3d at 1120–21 (citation omitted) (explaining that a difference in treatment between two employees is permissible where, for example, the individualized circumstances surrounding the infractions offered some mitigation for the infractions less severely punished); *Kendrick*, 220 F.3d at 1233 (concluding that factually distinguishable situations regarding the treatment of two similarly situated employees negated a finding of pretext).

*Second*, Holman argues that Textron failed to follow its own written policies and be objective, and that other procedural irregularities marred the investigation leading to his termination. Doc. at 31–32. A plaintiff may be able to demonstrate pretext with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances. *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1082 (10th Cir. 2023) (quoting *Kendrick*, 220 F.3d at 1230). But "an employer's failure 'to follow its own internal procedures does not necessarily suggest that the substantive reasons given by the employer for its employment decision were pretextual.'" *Markley*, 59 F.4th at 1082 (quoting *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007)). Likewise, "an employer's 'failure to conduct what appeared to be a fair investigation of the violation that purportedly prompted adverse action may support an inference of pretext.'" *Markley*, 59 F.4th at 1082 (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 542 (10th Cir. 2014)). But "some flaws in an employer's investigation do not, on their own, necessarily provide a jury sufficient basis to conclude the employer's stated reason for the adverse employment action was a pretext for discrimination." *Markley*, 59 F.4th at 1082–83. "This is because, flaws in an investigation could be attributable to many factors, including

a less than diligent investigator or a nondiscriminatory ulterior motivation an employer may have for terminating an employee." *Id.* at 1083. In sum, "an employment discrimination plaintiff cannot survive summary judgment where the evidence he produces permits nothing more than a speculative basis for believing discrimination was a motivating factor." *Id.* (citation omitted).

Holman has failed to provide evidence that Textron acted contrary to a written company policy. For example, Holman contends that Textron failed to follow its own policies in that "Textron uses prohibited factors in personnel decisions, contrary to its written policy." Doc. 34 at 31. But Holman never identifies the facts that would support this claim. And it is not obvious, even when considering Holman's statement of additional facts, what provisions of the policy Textron's investigation violated or what facts and circumstances would suggest an inference of age-related animus. That is insufficient. *Doe v. Univ. of Denver,* 952 F.3d 1182, 1191 (10th Cir. 2020) (outlining that district courts are under no obligation to search the record to find uncited materials); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.").

At best, he appears to complain that one of Textron's Labor Relations Managers—Joe Kniep—was predisposed against him, interviewed too many people, and failed to properly weigh witnesses' prior inconsistent statements. Doc. 34 at 31; *id.* at ¶¶ 67–83b. But Holman never demonstrates how the evidence he provides supports the argument that Textron failed to be objective or follow its written policy because of a discriminatory motive. Thus, even accepting that there were investigatory flaws or imperfections, Holman's evidence is legally insufficient because it would only invite juror speculation as to the basis for those imperfections. *Markley*, 59 F.4th at 1083.

It is also immaterial that Kniep allegedly harbored a disdain for Holman. *Contra* Doc. 34 at 31. While Holman contends that Kniep's "apparent animus" caused the investigation to lead to Holman's termination, he cites no evidence and makes no argument that Kniep's alleged animus towards Holman was attributable to age-related bias. And without that, Kniep's alleged animus and/or his role in the investigation is immaterial to the question of pretext. *See* Markley, 59 F.4th at 1086 (rejecting the argument that a

supervisor's predisposition against plaintiff was material when there was "zero evidence" that the alleged animus was the product of an age-based bias); *accord Fernandez v. Sugar Creek Packing Co.*, No. 22-2283, 2023 WL 5034316, at *5 (D. Kan. Aug. 8, 2023) (relying on *Markley* to reject a personal vendetta argument where there was no evidence that the animus was based on either age or race). And here, there is no such evidence.

Relatedly, Holman's assertion that Textron's investigation was marred by procedural irregularities is without merit. *Contra* Doc. 34 at 31. As noted above, procedural irregularities in the context of an investigation can support an inference of pretext. *Markley*, 59 F.4th at 1083–84; *see also Timmerman*, 483 F.3d at 1122 ("[D]isturbing procedural irregularities surrounding an adverse employment action may demonstrate that an employer's proffered nondiscriminatory business reason is pretextual."). But for that inference to arise, "there must be some evidence that the irregularity *directly and uniquely disadvantaged [the employee]*." *Markley*, 59 F.4th at 1083 (emphasis and alteration in original) (citation and internal quotation marks omitted).

Holman fails to cite any evidence that any irregularity directly and uniquely disadvantaged him. He attempts to make his point by proffering evidence that Textron tried to get Toppah's victims to admit that they had been harassed, Doc. 34 at ¶¶ 74, 75, 78–81, that Matlock assisted Textron in its investigation of Holman, *id.* at ¶ 64, and that Textron substantiated that Holman was aware of the sexual harassment allegations against Toppah in its Employee Relations Discipline Review Request, but not in its Investigation Summary. *Id.* at ¶¶ 89–90. *See also id.* at 31–32. That evidence, even if true, fails to give rise to an inference of pretext under applicable law because Holman has not established that it is a disturbing departure from investigative norms nor shown how it directly and uniquely disadvantaged him. After all, these details are peripheral to the simple fact that Textron believed Holman should have reported Derber's sexual harassment allegations but failed to do so. As a result, they fail to support his claim for pretext. *See Markley*, 59 F.4th at 1083–88 (detailing nine challenges to the company's investigation and concluding none of them demonstrated that any procedural irregularity directly disadvantaged the plaintiff); *Garrison v. Gambro, Inc.*, 428 F.3d 933, 938 (10th Cir. 2005) (citation omitted) (concluding summary judgment was proper where "no

disturbing procedural irregularity" was found sufficient to "give rise to a jury question regarding intent to discriminate").

*Third*, Holman argues that Textron provided inconsistent and conflicting rationales for different treatment of Matlock and Holman. Doc. 34 at 32–33. The inconsistency Holman identifies is Textron's submission to the United States Equal Employment Opportunity Commission, stating that Matlock was not aware that Derber was asserting sexual harassment, versus other evidence showing that Matlock might have actually known that the underlying allegations were sexual in nature. Doc. 34 at ¶¶ 42–61.

"[A] jury can reasonably infer pretext when an employer is 'inconsistent in the reasons it provide[s] for the termination.'" *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 887 (10th Cir. 2018) (quoting *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005)). "Such inconsistencies include abandoning explanations that the employer previously asserted." *Id.* (citing *Whittington*, 429 F.3d at 994). In a case where different reasons are provided for the adverse employment action, they "do not have to be contradictory to show pretext—they only need to undermine the credibility of the employer's proffered reason for termination." *Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1293 (10th Cir. 2022). Offering additional justifications for termination without abandoning the primary reason for termination does not, without more, establish pretext. *Id.* That is, to support an inference of pretext, the additional justifications must "suggest dishonesty or bad faith" in the reason given for the adverse action. *Id.* (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002 (10th Cir. 2011)).

Holman's evidence, when viewed in the light most favorable to him, does not show Textron has abandoned or been inconsistent in the reason it provided for terminating him. Both Holman and Textron agree that Textron disciplined Holman because he failed to follow Textron's policy, which required him to escalate the complaint that he received to a superior, report the complaint to human resources, or otherwise advise an Ethics and Compliance or a Legal Representative, which he did not do. Doc. 33 at ¶¶ 30, 31. That Textron may have had evolving factual knowledge about whether Matlock did or did not know about the basis of Derber's complaint is immaterial to this dispute because the pretext inquiry looks for shifting bases for the termination decision. *Fassbender*, 890

F.3d at 887 (quoting *Whittington*, 429 F.3d at 994); *see also DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970–71 (10th Cir. 2017) (explaining that facts are considered as they appeared to the person making the decision and that the employer's decision is not to be second-guessed even if it seems in hindsight that the action taken constituted poor business judgment); *see also Litzinger*, 25 F.4th at 1292 (affirming summary judgment where additional reasons for termination were given that did not contradict or undermine the original reason).

**3.** Finally, Holman contends the result reached in two Tenth Circuit cases justifies denying Textron's motion for summary judgment. Doc. 34 at 28–35 (first citing *Stroup v. United Airlines, Inc.*, 26 F.4th 1147 (10th Cir. 2022); and then citing *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193 (10th Cir. 2021)). Not only do the cases fail to support him, but they highlight the deficiencies that doom his claim.

In both cases, the Tenth Circuit found sufficient evidence to find pretext. For example, the plaintiffs in *Stroup* provided evidence that the policy violations that led to their termination were commonplace amongst the employer's employees and yet did not lead to the termination of others, that the employer failed to follow both its express and de facto policies and procedures for handling employees, and that it offered conflicting rationales for its termination decision. *Stroup*, 26 F.4th at 1159. So, too, with *Ibrahim*, where the plaintiff provided evidence that a similarly situated employee was treated with more leniency after only a limited investigation. *Ibrahim*, 994 F.3d at 1201.

Holman, however, lacks this type of evidence. Holman has not provided evidence that policy violations were commonplace amongst Textron's employees. Holman has also failed to provide evidence that Textron failed to follow its express/de facto policies for handling employees or that Textron offered conflicting rationales for its decision to terminate Holman. Finally, Holman has not established that Matlock was treated with more leniency for no reason. In fact, the undisputed facts show that the company had a valid, non-pretextual reason for the difference in treatment between him and the younger Matlock.

**III**

For the foregoing reasons, Textron's Motion for Summary Judgment, Doc. 32, is GRANTED.

It is so ordered.

Date: April 10, 2025

s/ Toby Crouse
Toby Crouse
United States District Judge